# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.  21-2682

KENDALL AUSTIN,

        *Plaintiff*,

V.

ARAPAHOE COUNTY, OFFICER BRUCE PETERSON, DETECTIVE NICKI BALES, DETECTIVE BRUCE ISACSON, DETECTIVE MARVIN BRANDT, AND INVESTIGATOR MIKE DICKSON; in their personal and official capacities

        *Defendants*.

---

## CIVIL RIGHTS COMPLAINT WITH REQUEST FOR TRIAL BY JURY
---

Plaintiff Kendall Austin, by and through his attorneys, David Fisher and Michael Thompson, complains against the Defendants and requests a trial by jury as follows:

## INTRODUCTION

1.  This case arises from the malicious prosecution of Kendall Austin by the Defendants. Mr. Austin was interviewed several times by the Defendants and was eventually coerced into confessing to a murder that he did not commit and that he had no involvement in whatsoever. The Defendants obtained this coerced confession by contaminating his interviews with important details of the crime.  The Defendants also made various threats to Mr. Austin to get him to confess to the crime.  The Defendants also made various promises of leniency which induced Mr. Austin into falsely confessing to the crime.  Finally, the defendants also induced another man,

Joseph Martin, to say that Kendall Austin was involved in this homicide. The Defendants coerced Joseph Martin into saying that Kendall Ausitn was involved in the homicide by using the same or similar tactics as outlined above.

2. Mr. Austin was eventually indicted based on this knowingly false information and he was jailed for more than three years before the prosecution ultimately dismissed all the charges against him.

## JURISDICTION

3. This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986,1988 and the Fourth and Fourteenth Amendments to the United State Constitution.

4. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343 and the previously mentioned statutory and constitutional provisions.

5. Jurisdiction supporting Plaintiff's claim for attorney's fees is conferred by 42 U.S.C. § 1988.

## VENUE

6. This case is instituted in the United States Court for the District of Colorado pursuant to 28 U.S.C. §1391 as the judicial district in which all relevant events and omissions occurred.

## PARTIES

7. At all times relevant hereto, Plaintiff Kendall Austin was a resident of the State of Colorado.

8. Defendant Arapahoe County was, at all times relevant herein, authorized by law to maintain and did maintain a police department known as the Arapahoe County Sheriff's

Department which acted as its agent in the area of law enforcement, including, without limitation, conducting investigations and causing charges to be brought about alleged crimes.

9.  Defendant Bruce Peterson was, at all times relevant herein, an Officer with the Arapahoe County Sheriff's Department.

10.  Defendant Niki Bales was, at all times relevant herein, an Officer with the Arapahoe County Sheriff's Department.

11.  Defendant Mike Dickson was, at all times relevant herein, an Investigator with the Arapahoe County District Attorney's Office.

12.  Defendant Marvin Brandt was, at all times relevant herein, an Officer with the Arapahoe County Sheriff's Department.

13.  Defendant Bruce Issacson was, at all times relevant herein, an Officer with the Arapahoe County Sheriff's Department.

**FACTS**

14. On November 6, 2009, Andrew Graham was shot and killed.  Mr. Austin had no involvement whatsoever in the homicide of Andrew Graham and is completely innocent of the crime.

15.  The police had no leads and there was immense pressure to solve the crime and to close the case.

16.  Based on this pressure, the Defendants conspired together to induce the confession of Mr. Austin.

17. On December 17, 2015, Defendants Peterson, Brandt, and Isaacson knowingly and intentionally coerced a statement from Joseph Martin and induced him to say that Kendall Austin was involved in the homicide of Andrew Graham.

18. Defendants Peterson, Brandt, and Isaacson induced this false statement by feeding facts to Joseph Martin and, at the same time, making threats and false promises of leniency in order to obtain this false statement.

19. Specifically, Defendants Peterson, Brandt, and Isaacson repeatedly told Mr. Martin that they knew that he was there the night of the shooting and that they could prove it even though this was untrue.

20. They told him they knew he was not the shooter and that they believed he was only trying to rob Mr. Graham.

21. They told him they knew who the shooter was and that they knew it was not Mr. Martin.

22. They told him that they did not care about a robbery and were only interested in the murder and prosecuting the shooter.

23. They told him they had enough evidence to charge him with first degree murder and that they already had a warrant for his arrest for first degree murder that just needed a judge's signature.

24. But, they told him, if he would just tell them a "story" he would not get into trouble.

25. While making these threats and promises, the Defendants fed Kendall Austin's name to Mr. Martin.

4

26. Ultimately, as a result of this coercion, Mr. Martin told the Defendants that he and several others, including Mr. Austin, had been trying to rob Mr. Graham and that one of them had shot him.

27. All of the Defendants then made a plan to interview Kendall Austin to try to get him to confess to the crime in order to corroborate the coerced statements of Joseph Martin in order to solve the crime and relieve the pressure of the unsolved homicide investigation.

28. During the interview of Mr. Austin, Bales and Peterson fed facts to Mr. Asutin about the homicide and made threats and promises to him in order to induce him to confess to being involved in the homicide.

29. Specifically, during a pair of audio recorded interviews of Mr. Austin on January 21, 2016 and February 3, 2016, Defendants Bales and Peterson told Mr. Austin that other people were saying he was at the scene of the shooting and that they could prove he was there. They told him they had enough evidence to charge him with first degree murder and they showed him a fake warrant for his arrest for first degree murder that they told him only was only missing a judge's signagure. All of this information was untrue and the Defendants knew it was untrue.

30. They told him that they knew he was not the shooter and that they were only interested in getting the shooter. They told him they did not care about a robbery. They told him that if he tells them he was there and what he knows he would be a witness rather than a suspect and would only be looking at probation and testifying. They told him if he did not tell them what they wanted to hear, he would be charged with first degree murder.

31. Throughout these interviews, Mr. Austin denied all knowledge of or involvement in the murder. At the conclusion of the second interview, Mr. Austin volunteered to provide a DNA sample and submit to a polygraph examination.

32. On February 16, 2016, Mr. Austin reported to the Arapahoe District Attorney's Office for the polygraph examination. Defendant Dickson then conducted an interview and a polygraph examination of Mr. Austin regarding the homicide.

33. After performing the polygraph examination, Defendant Dickson lied to Mr. Austin about the result exam in order to obtain his false confession.

34. During that interview and polygraph examination, Dickson fed Mr. Austin facts about the homicide and made threats and promises to induce him to confess to the crime.

35. Specifically, Defendant Dickson told Mr. Austin that the polygraph results proved that he was at the scene of the shooting and that he was not getting out of it. However, Dickson said he did not believe Mr. Austin was the shooter but that if he continued to lie about being there people might think he was the shooter. Further, Defendant Dickson told Mr. Austin that if he continued to lie about being present at the murder that he was going to go down. If, on the other hand, Mr. Austin would just be honest and admit that he was there, he would receive no punishment and would be able to move on and not lose his family and his two children.

36. Immediately following the interview with Dickson, Defendants Bales and Peterson came into the room and made additional promises of leniency and threats in order to coerce Mr. Austin to confess to the crime.

37. Specifically, Bales and Peterson lied and told Mr. Austin that they now knew for sure that he was there that night but that he was not the shooter and that they wanted to help him.

They threatened him that if he continued to maintain that he was not at the scene of the murder, he would be charged with first degree murder. But, they promised him, if he just told the "truth" - which they now knew involved him being present at the murder - then he would be able to walk away and go home with his family.

38. During and before the polygraph interview, all three defendants conspired about their plan to get the Plaintiff to confess to a crime that they knew he could not possibly have committed.

39. During this interview, Mr. Austin eventually made several false inculpatory statements as a direct result of the numerous threats and promises of leniency wielded against him. These statements, while facially inculpatory, were obviously false and were merely an objectively impossible amalgamation of the facts fed to him by the Defendants.

40. Before eventually making any inculpatory statements, Mr. Austin repeatedly denied any involvement in the homicide but all of these denials were ignored and the Defendants continued to make false promises of leniency and threats in order to induce Mr. Austin to confess to a crime that they knew he had not committed.

41. Defendants knew or should have known that Mr. Austin's inculpatory statements were false because the eventual confession was impossible based on other information known to the Defendants.

42. For example, after being coerced, Mr. Austin eventually "admitted" that he, along with other suspects, followed Andrew Graham on the light rail that night before they committed the crime. However, the Defendants knew that this could not possibly be true. They had already seen the light rail video footage from the night in question. That footage made clear that Andrew

Graham was on that light rail, but neither the Mr. Austin, nor any of the other people he mentioned in his coerced confession were on the light rail that night with Andrew Graham.

43. Additionally, the Defendants knew that all of the physical evidence did not match Mr. Austin. And the Defendants knew that Mr. Austin's "confession" was entirely inconsistent with other known facts of the homicide.

44. On January 18, 2017, Plaintiff was indicted by a grand jury for the homicide of Andrew Graham.

45. Plaintiff's false and coerced confession was used to garner his indictment.

46. The Defendants also caused Joseph Martin's knowingly coerced statements to be submitted to the grand jury.

47. Based on this information being introduced into evidence before the grand jury, Plaintiff was indicted for murder and criminal proceedings were commenced against him.

48. Plaintiff spent nearly 3 years in jail awaiting trial. On October 2, 2019 all charges against the Plaintiff were dismissed by the district attorney's office.

## FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983-Malicious Prosecution in violation of the Fourth and Fourteenth Amendments (Against All Defendants)

49. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

50. At the time of the above events, Plaintiff had the clearly established constitutional right to be free from malicious prosecution without probable cause under the Fourth Amendment.

51. Any reasonable police officer, including the defendants in this case, knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time. There existed Tenth Circuit law on this issue before the events complained of which are articulated above.

52. The individual defendants violated Kendall's Fourth Amendment rights to be free from malicious prosecution without probable cause and without due process when they worked in concert to secure an arrest warrant based only on his coerced statements and to secure false charges against him, resulting in his unlawful confinement and prosecution.

53. The defendants conspired and/or acted in concert to institute, prosecute and continue a criminal proceeding for Felony Murder, against Kendall Austin without probable cause.

54. Defendants coerced Kendall to falsely incriminate himself and then willfully, maliciously, in bad faith, and in reckless disregard of Kendall's federally protected constitutional rights, perpetuated the use of Kendall's false statements to secure his arrest, prosecution and conviction.

55. The criminal proceedings against him terminated in Kendall's favor. The District Attorney's Office dismissed all charges for which Kendall had been arrested, indicted and prosecuted on October 2, 2019.

56. The acts and omissions of all individual Defendants were moving forces behind Kendall's damages.

57. These individual Defendants acted in concert and joint action with each other.

58. The acts or omissions of Defendants as described herein intentionally deprived Kendall of his constitutional and statutory rights and caused him other damages.

59. Defendants are not entitled to qualified immunity for the complained of conduct.

60. The Defendants to this claim at all times relevant hereto were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in its actions pertaining to Kendall.

61. As a proximate result of Defendants' conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. Plaintiff is further entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

### Second Claim for Relief
### 42 U.S.C. § 1983 - Conspiracy
### (Against all Defendants)

62. Plaintiff relies on all of the above facts in asserting this claim.

63. Defendants together reached an understanding, engaged in a course of conduct and otherwise conspired among and between themselves to deprive Plaintiff of his due process rights by maliciously prosecuting him, fabricating evidence, manipulating witness testimony, suppressing exculpatory evidence, and falsify charges in order to indict, arrest, and prosecute Plaintiff on without probable cause.

64. Defendants' misconduct was malicious, willful, and committed with reckless indifference to the rights of others.

65. Defendants also conspired against Plaintiff to abuse the judicial process, to defame him, intentionally cause emotional distress, and to interfere with his prospective economic advantage.

66. As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

67. Plaintiff is further entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

### THIRD CLAIM FOR RELIEF
**Violation of 42 U.S.C. §1983 - Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in violation of the Fourth, Fifth, and Fourteenth Amendments and in violation of 42 U.S.C.§1981**
*Monell* **Claim Against the Municipal Defendants**

68. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

69. Arapahoe County, through its Police Department, had in effect, both before and at the time of the events alleged in this complaint, several interrelated *de facto* policies, practices and customs, including, *inter alia*:

    a. a policy, practice and custom of manipulating and fabricating evidence;

    b. a policy, practice and custom of failing to properly train or supervise officers in the proper techniques of investigating serious crimes;

    c. a policy, practice and custom of using coercion, isolation, intimidation, manipulation, deceit, false promises, threats and other unlawful and improper methods to secure false confessions;

    d. a policy, practice and custom of failing to properly discipline officers who violate the United States Constitution or law, or otherwise transgress the rights of criminal suspects during their investigation; and

    e. a policy, practice and custom of immediate public vilification of persons accused of "high-profile" crimes with concomitant refusal to consider evidence inconsistent with that portrayal.

70. These interrelated policies, practices and customs, separately and/or together, were implemented with deliberate indifference, and were a direct and proximate cause of Kendall's Constitutional violations and injuries, as set forth above.

71. These interrelated policies, practices and customs, separately and/or together, were the direct and proximate cause of the injury and damage to Kendall and violated his rights guaranteed by the United States Constitution.

72. The existence of these interrelated policies, practices and customs can be inferred from numerous incidents reflecting a pattern of police misconduct like that alleged herein.

73. The existence of these interrelated policies, practices and customs can be inferred from the fact that the incidents of police and prosecutor misconduct alleged herein were authorized by individuals with policymaking authority in the Police Department.

74. Defendants are not entitled to immunity for the complained of conduct.

75. Arapahoe County were, at all times relevant, policymakers for the County, and in that capacity established policies, procedures, customs, and/or practices for the Sheriff's Office.

76. In light of the duties and responsibilities of those police officers that participate in arrests and preparation of police reports on alleged crimes, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

77. The deliberate indifference to training and supervision by Defendant County resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to the Defendants and was the moving force in the constitutional and federal violations complained of by Kendall Austin.

78. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages. Plaintiff is further entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

**PRAYER FOR RELIEF**

Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the Defendants and grants:

A. Compensatory and punitive damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount of $7,000,000, or such greater amount as may be set by a jury;

B. Economic losses on all claims allowed by law;

C. Special damages;

D. Attorneys' fees and the costs associated with this action under 42 U.S.C. §1988, including expert witness fees, on all claims allowed by law;

E. Pre- and post-judgment interest at the lawful rate; and

F. Any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

## REQUESTS FOR A TRIAL BY JURY

A trial by jury is hereby demanded on each and every one of the claims as pled herein.

Dated:      Denver, Colorado
            October 1, 2021

Respectfully submitted,

/s/ David N. Fisher (#48253)
**FISHER & BYRIALSEN, P.L.L.C.**
4600 S. Syracuse Street, 9th Floor
Denver, Colorado 80237
T: 303-256-6345
David@ FBLaw.org